# IN THE COURT OF APPEALS OF IOWA

No. 21-0684
Filed September 1, 2021

IN THE INTEREST OF R.G.,
Minor Child,

K.H., Mother,
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

    A mother appeals the termination of her parental rights to a daughter. **AFFIRMED.**

    Thomas Hurd of Law Office of Thomas Hurd, Des Moines, for appellant mother.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Magdalena Reese of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

    Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

    * Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Kathrine appeals the termination of her parental rights to her one-year-old daughter. The court found R.G. could not be returned to parental care at the present time because of Kathrine's ongoing substance abuse. Kathrine now contends the juvenile court abused its discretion and denied her right to counsel and due process because it did not order the drug testing she requested.

R.G. is Kathrine's third child. The court terminated her rights to the two older children because her addiction prevented her from being a safe parent. Because of her history, the Iowa Department of Human Services (DHS) contacted Kathrine in the hospital after R.G.'s birth in June 2019. R.G. stayed with Kathrine. But the next month, Kathrine overdosed on heroin in a gas station bathroom while the infant was waiting in the car outside.

The court removed R.G. from Kathrine's custody in July 2019. To secure the child's return, Kathrine pursued goals of maintaining her sobriety and obtaining mental-health treatment. To show her sobriety, Kathrine took random drug tests. She also submitted to drug testing on probation.[1] A substance-abuse counselor diagnosed Kathrine with opioid use disorder in July 2019. The counselor recommended intensive outpatient treatment, and Kathrine started medication management with methadone in August.

Over the next year, Kathrine's progress was mixed. In November 2019, she tested positive for methadone, but also for marijuana. In late February 2020, the court approved returning custody of R.G. to Kathrine. But the same day, Kathrine

---

[1] The gas station incident led Kathrine to be charged with child endangerment, but she was placed on probation.

was arrested and charged with operating while intoxicated and tested positive for opiates. She had negative drug tests in March, May, and September 2020. But in December, she was charged with public intoxication and admitted to drinking alcohol several days that month. Her sweat patches tested positive for THC that same month and again in February 2021. Kathrine also fell behind in her mental-health treatment goals; she began treatment in December 2020 but as of March 2021 had attended only nine of sixteen scheduled appointments.

At a contested permanency hearing (held over two days in December 2020 and January 2021), Kathrine requested different drug testing: a hair test and secure continuous remote alcohol monitoring (SCRAM).[2] Kathrine also asked the State Public Defender to reimburse the cost of such continuous testing so that she could use that information to contest the State's petition to terminate her parental rights. The court found it was unreasonable to order the added testing because "DHS does not have funding for such a device," and "DHS is able to test for alcohol through random drug screens." It found the DHS made reasonable efforts to provide drug testing. As to Kathrine's request that the State reimburse the costs of additional testing, the juvenile court was "not aware of any authority to authorize such an expense."

The State believed Kathrine made insufficient progress toward the case goals. So in February 2021, the State petitioned to terminate her parental rights.

---

[2] The State contends Kathrine failed to preserve error on her request for continuous monitoring. But she did ask about SCRAM testing and received a ruling. According to her testimony, she used a SCRAM device requiring breath samples four times a day. We consider the issue preserved for review. *See State v. Zacarias*, 958 N.W.2d 573, 587 (Iowa 2021) (rejecting error preservation argument when district court considered issue and ruled on it).

At the termination hearing, Kathrine renewed her requests for different drug tests and declared the court's denials violated her rights to counsel and due process.[3] In its termination order, the court pointed out:

> The court left drugs screens at DHS discretion, but did not limit the type of drug screen to be utilized. The court did not prohibit a hair test from being offered to the mother. The mother had previously been offered a hair test. She did not provide a hair test when requested. She presented herself several days later after altering her hair. Hair tests test for chronic use but do not test for alcohol.

It also pointed out that her probation officer had placed Kathrine on a SCRAM device, and it detected alcohol one time. The court rejected the notion that the mother was "entitled to a specific manner of testing in order to prove her sobriety."

As for her request the state pay for other testing, including the hair test, the court—citing the administrative code for reimbursements through the State Public Defender—found no statutory authority to reimburse such expenses. On top of that, the court found the expense was "not necessary" because the State was already paying for drug testing through DHS and probation services. And those results "demonstrated that [Kathrine] was not maintaining sobriety from marijuana or from alcohol." The court also rejected her denial-of-counsel argument finding her attorney had adequate opportunity to test the State's evidence. Finally, the court terminated her parental rights to R.G. under Iowa Code section 232.116(1)(h) (2021).[4]

---

[3] The court allowed the parties to brief the right-to-counsel issue after the hearing. The guardian ad litem and the State agreed that the lack of hair test or continuous monitor drug testing did not violate Kathrine's right to counsel.

[4] The court found insufficient proof to terminate Kathrine's rights under section 232.116(1)(e) (failure to maintain significant and meaningful contact) and (*l*) (chronic substance abuse). The court also terminated the parental rights of R.G.'s father. He does not join this appeal.

On appeal, Kathrine does not challenge the sufficiency of the evidence to terminate her parental rights under that statutory ground. Nor does she argue it is not in R.G.'s best interests to terminate, nor that another factor applies to avoid termination. *See* Iowa Code § 232.116(1)–(3). Instead, she renews her contentions the juvenile court abused its discretion in denying her request for hair drug testing at state expense, and that decision violated her rights to counsel and due process.

We deal first with Kathrine's argument that the trial court abused its discretion in denying her request to bill the state for alternative forms of drug testing.[5] She contends the code authorizes such expenses. The juvenile court analyzed the question under the Iowa Administrative Code. The administrative code allows a court-appointed attorney representing an indigent person to be reimbursed for "necessary" expenses for transcripts, "investigators, foreign language interpreters, evaluations, and experts." Iowa Admin. Code r. 493-12.7(1). The code does not define "evaluations," and no cases have interpreted the term to include drug testing. Kathrine also cites Iowa Code sections 815.10 and 815.11, both of which authorize costs in criminal and juvenile proceedings, and section 232.141(2)(a) for attorneys in juvenile court proceedings "including

---

[5] Generally, we review child-welfare proceedings de novo. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). We also review constitutional questions de novo. *Id.* By contrast, we review issues of statutory interpretation for the correction of legal error. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). Kathrine contends we review the juvenile court's denial of alternative drug testing for an abuse of discretion, citing *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019) (reviewing refusal to appoint expert witness for abuse of discretion). But when a district court reviews the state public defender's denial of a claim for attorney fees, appellate review is for errors at law. *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73 (Iowa 2010). We opt to apply that standard here.

fees and expenses for foreign language interpreters, costs of depositions and transcripts, fees and mileage of witnesses, and the expenses of officers serving notices and subpoenas." None of these sections explicitly authorizes expenses for drug testing in child-welfare cases. On appeal the State agrees with the juvenile court that the authority is "unclear." The State leans on the court's conclusion that the expenses were not "necessary."

Assuming without deciding that the court could order such testing at state expense, we agree it was unnecessary under the circumstances. Kathrine contends alternative drug testing was critical to defending against the termination petition. She argues "for the purpose of demonstrating sustained sobriety over a period of time, a urine test and a patch test are vastly inferior to a hair test." She points to the DHS social worker's testimony that the hair tests detect "chronic use" while urine and sweat-patch tests identify more immediate use, in the one-to-five-day timeframe. She also cites *In re A.W.*, No. 18-0382, 2018 WL 2084913 (Iowa Ct. App. May 2, 2018), in which a forensic toxicologist testified "a sweat-patch test is designed to detect smaller amounts of drugs that [urine analyses (UAs)] and hair tests may not detect." 2018 WL 2084913, at *2. That expert explained UAs can detect use within the prior two days; sweat patches test for up to a week; and a hair test can measure use as far as eighty-eight days back. *Id.*

On the evidence before this juvenile court, the alternative testing requested by Kathrine was unnecessary to address the State's allegations that R.G. could not safely return home. The court gave DHS discretion to set up a procedure for testing Kathrine's substance use, and Kathrine tested positive periodically through most of the case. Although she logged a brief period of sobriety between March

and September 2020, she picked up a public intoxication charge in December and admitted drinking several days that month. Her sweat patch tests also detected marijuana use in December 2020 and February 2021.[6] Two weeks before the termination hearing, she tested positive for alcohol on her SCRAM unit. Under Kathrine's own logic, this raft of positive tests reveal she did not maintain sobriety. Rather than help her show sustained sobriety, hair testing was likely to confirm her drug use. Even if the hair test was negative, it would not have erased the many positive drug test results and Kathrine's admissions to alcohol use.

What's more, Kathrine *was* offered hair testing at one point. In September 2020, she appeared for a random drug screen and learned it would be a hair test. She refused to submit a hair sample and left. Afterward, she cut and dyed her hair. So when given the opportunity to provide a hair sample, she balked. And as for continuous testing, when probation services placed her on a SCRAM device, she tested positive for alcohol one month before the termination hearing.[7]

In its response to Kathrine's petition on appeal, the State contends her argument is "at its core" a reasonable-efforts complaint. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (explaining the DHS must make every reasonable effort to return the child to the parent). The State contends DHS provided Kathrine with drug testing that reasonably allowed her to demonstrate her commitment to sobriety. We agree. Alternative testing at state expense, even if authorized, would

---

[6] Kathrine testified her doctor prescribed CBD oil for her back pain, but did not produce a prescription.

[7] Kathrine testified that she consumed alcohol as part of a religious ceremony, but the district court doubted her credibility on that point.

not have provided evidence favorable to Kathrine. The juvenile court did not err in denying the request.

Next, Kathrine contends the court's refusal to order alternative drug testing amounted to structural error. "[T]he court not only denied counsel's request for testing but effectively allowed the State to control what testing the mother was offered and therefore what proof was available to be developed and available to the mother in the termination of parental rights proceeding." Structural error occurs "when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness." *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). The juvenile court found that Kathrine's attorney subjected the State's case to "meaningful adversary testing" on the available evidence.

> Kathrine has been represented at every stage of the underlying CINA proceeding, and fully at the termination of parental rights proceedings. Counsel has had the opportunity to cross-examine the State's witnesses, make objections, submit evidence, call witnesses, and argue the law. There is no doubt that Kathrine has received zealous advocacy during these proceedings.

We agree. The lack of the alternative testing did not leave Kathrine "constructively without counsel" or render the proceedings "presumptively unreliable." *Id.* at 253.

Next, Kathrine contends the court violated her due process rights. She cites *English v. Missildine*, 311 N.W.2d 292 (Iowa 1981), for the proposition that the right to counsel encompasses reasonable expenses to indigent defendants. Our court has held that although the Sixth Amendment does not apply to termination cases, "due process requires counsel appointed under a statutory directive to render

effective assistance." *In re B.N.*, No. 00-0220, 2001 WL 57987, at *2 (Iowa Ct. App. Jan. 24, 2001) (citing *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986)).

To determine what process is due, we balance three competing interests: "(1) the private interest affected by the proceeding; (2) the risk of error created by the procedures used, and the ability to avoid such error through additional or different procedural safeguards; and (3) the countervailing governmental interests supporting use of the challenged procedures." *In re A.H.*, 950 N.W.2d 27, 35 (Iowa Ct. App. 2020) (quoting *In re T.S.*, 868 N.W.2d 425, 432 (Iowa Ct. App. 2015)).

Without question, Kathrine has an interest in the custody of her child. *See T.S.*, 868 N.W.2d at 432. The State offered testing for Kathrine to demonstrate her ability to safely parent by refraining from drug and alcohol use, problems that have persisted through two prior termination cases. *See, e.g.*, *In re M.P.*, No. 19-0995, 2019 WL 5063337, at *4 (Iowa Ct. App. Oct. 9, 2019). That periodic and random drug and alcohol testing provided proper safeguards. Her positive tests and other evidence contributed to the court's conclusion that R.G. could not be returned to her mother's care. In denying the expense of additional testing that would not have helped Kathrine show sustained sobriety, the court recognized the governmental interests in efficiency and economy in judicial proceedings. The court afforded Kathrine due process.

In sum, the court did not err in denying the request for additional expenses and that denial did not violate Kathrine's constitutional rights. Kathrine challenges no other finding of the juvenile court, so we affirm the order terminating her parental rights to R.G.

**AFFIRMED.**